UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
JOSEPH ARENA, on behalf of himself            Docket No. CV-12-1078 (DRH)(ETB)
and all others similarly situated,


                                        Plaintiff,

    -against-


PLANDOME TAXI, INC. and ROBERT MARMO, an
individual,

                                        Defendants.
-----------------------------------------------------------------X


## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION


THE LAW OFFICES OF DAVID S. FEATHER
*Attorneys for Defendants*
666 Old Country Road, Suite 605
Garden City, New York 11530


David S. Feather, Esq.
*On the Brief*

## **PRELIMINARY STATEMENT**

A review of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1, as well as the Plaintiffs' Counter-Statement of Uncontested Facts, reveals that the parties agree that the following facts relevant to this motion are undisputed:

1. Plandome Taxi provides transportation to the community primarily in and around Manhasset, New York, on Long Island. Paragraph "3" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

2. The transportation is primarily within the Town of North Hempstead and its surrounding communities, with occasional trips outside that geographical area, such as to area airports. Paragraph "8" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

3. Plandome Taxi maintains a taxi stand at the Manhasset train station, as well as one on Plandome Road in Manhasset, New York[1]. Paragraphs "9" and "10" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

4. Plandome Taxi also services individuals who call the dispatcher at the Defendant's base station for a taxicab to transport them to and from other locations. Paragraph "11" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

5. Taxicabs are forbidden by law to cruise the streets within Nassau County, and more specifically, the Town of North Hempstead, for a fare. Paragraph "13" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

6. Plandome Taxi does not have any contracts for recurrent transportation.[2] Paragraph "17" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

7. Fares charged to customers are based on geographical zones. Paragraph "18" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

---

[1] While the Plaintiffs seems to argue the semantics of calling these stands "taxi stands", they do not dispute the fact that the Defendant maintains two such stands: one at the Manhasset train station, and one on Plandome Road in Manhasset.

[2] While the Plaintiffs state they do not have knowledge to dispute the facts set forth in paragraphs "17" and "18" of the Defendants' Statement of Uncontested Facts, they have submitted no evidence to contradict the assertions set forth in those paragraphs.

8. Plandome Taxi primarily utilizes, and the Plaintiff only drove, five (5) passenger vehicles. Paragraph "19" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

9. The Plaintiff Arena possesses a New York State Class E driver's license. Paragraph "24" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

10. The Plaintiff maintained a daily trip sheet, which he completed every day. Paragraph "31" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

11. On this trip sheet the Plaintiff wrote the time that he arrived at the base station at the beginning of his shift, the time his shift ended, the identification number of the taxicab that he drove, a list of his pick-ups and drop-offs, the times of those individual trips, and the amount of each fare. Paragraph "32" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1;

12. The Plaintiff completed this trip sheet himself, and submitted it at the end of every shift. Paragraph "33" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1; and

13. The computation of the Plaintiff's remuneration never changed throughout the time period that he drove for the Defendant. Paragraph "39" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1.

## POINT I

## THE PLAINTIFFS ARE EXEMPT FROM THE OVERTIME PROVISIONS OF THE FAIR LABOR STANDARDS ACT

As set forth in the Defendants' Memorandum of Law-in-Chief, the Plaintiffs are exempt from the overtime provisions of the Fair Labor Standards Act (FLSA) because they perform services as taxicab drivers for an employer engaged in the business of operating taxicabs. 29 U.S.C. §213(b)(17).

In their papers, the Plaintiffs admit that the Defendant is a business which operates "some sort of transportation vehicle". See page "6" of the Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion for Summary Judgment. However, the Plaintiffs dispute

that Plandome Taxi's vehicles constitute "taxicabs", and thus do not fall within the FLSA taxicab exemption.

The Plaintiff argues that the term "taxicab", as that term is used in 29 U.S.C. §213(17) only covers taxicabs which operate on a taximeter basis and can pick up street hails. However, the Plaintiff utterly fails to support this baseless contention.

The Plaintiffs' argument must fail for a number of reasons. The Plaintiffs' main argument seems to hinge on the dictionary definition of a "taxicab" from 1957, as well as one from 2001. See Plaintiff's Exhibit "13". However, the dictionary definitions cited by the Plaintiffs define a "taxicab" as a "car licensed to transport passengers in return for payment of a fare, *usually* fitted with a taximeter". (italics added). Certainly, the fact that taxicabs are defined in those dictionaries as "usually" having taximeters clearly means that they do not have to have such a taximeter in order to be considered a taxicab.

In addition, other, more recent dictionary sources define the term "taxicab" differently. For example, the online Merriam-Webster Dictionary from 2012 defines a "taxicab" as "an automobile that carries passengers for a fare usually determined by the distance traveled". Please see the Mirriam-Webster definition of "taxicab" from 2012, annexed to the Reply Affirmation of David S. Feather as Exhibit "K". This is, of course, exactly what the Plaintiffs drove – vehicles which carry passengers for a fare determined by the distance traveled.

It is uncontroverted that taxicabs licensed by the Town of Hempstead and registered with the County of Nassau are not allowed by law to "cruise" for fares, nor are they allowed to have taximeters. Please see Nassau County Office of Consumer Affairs Taxi and Limousine Commission Rules and Regulations, as well as §52-38 and §52-39 of Chapter 52 of the Town of North Hempstead Town Code, both annexed to the Affirmation of David S. Feather as Exhibits

"G" and "H", respectively. In fact, fares are designated by distance traveled and zones. Please see §52-38 and §52-39 of Chapter 52 of the Town of North Hempstead Town Code, as well as Plandome Taxi's Rate and Zone Information, annexed to the Affirmation of David S. Feather as Exhibits "H" and "I", respectively.

The Defendant herein should not be penalized simply because Nassau County and the Town of North Hempstead forbid the use of taximeters and the hailing of taxicabs. Congress could not have intended that drivers who do the same thing across the country should be treated differently based on whether the vehicles they drive are equipped with taximeters, and are allowed to be hailed directly from the street, especially when taximeters and the hailing of cabs is unlawful in some jurisdictions. It makes no sense that Congress would intend to make drivers of taxicabs in one jurisdiction exempt from the overtime provisions of the FLSA, while not allowing drivers of taxicabs in another jurisdiction to be so exempt, despite the fact that they both provide the same exact service to the general public.

Indeed, as the court in Cariani v. D.L.C. Limousine Service, Inc., 363 F.Supp.2d 637 (S.D.N.Y. 2005) stated, "[t]he FLSA is a statute of nationwide application. A uniform definition of the term "business of operating taxicabs" devised by the Department of Labor better serves the purpose of a federal labor law than does application of a variety of local definitions, which are practically guaranteed to lead to different results in different part of the country".

Most importantly, while the term "taxicab" is not defined in 29 U.S.C. §213(17), that term has been defined by the United States Department of Labor, which is the federal agency charged with enforcing the FLSA. As is set forth in the Defendants' Memorandum of Law in Chief, the United States Department of Labor defines the "Business of operating taxicabs" as follows:

4

> "The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they can carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation need of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as other places where numerous demands for taxicab transportation may be expected". See Chapter 24h of the United States Dept. of Labor Field Operations Handbook (1999 ed.), annexed to the original Affirmation of David S. Feather as Exhibit "K".

While the Plaintiffs argue that this definition should be disregarded, it has been cited by all of the caselaw analyzing this issue, including those cases cited by the Plaintiffs.

The definition of a "taxicab" is set forth within that paragraph: it is a small motor vehicle which carries persons and property to a requested definition in the community; operates without fixed routes or contracts for recurrent transportation; serves the miscellaneous and predominantly local transportation needs of the community; may include occasional and unscheduled trips to or from transportation terminals as the individual passenger may request, and may include stands at transportation terminals as well as other places where numerous demands for such transportation may exist. This definition could not be clearer.

The Plaintiffs do not dispute that the Defendants' taxicabs do all of the above! Rather, as is set forth above, the Plaintiffs' argument is premised upon the fact that a taxicab must have a taximeter in order to be a considered a taxicab under §213(b)(17), and that they must be able to be hailed from the street. However, nowhere within the Department of Labor definition is the term "hail" or "taximeter" used.

On page 17 of their Brief, the Plaintiffs actually argue that while the Defendants' cars may be "taxis", they are not "taxicabs". This is a distinction without a difference. Indeed, even

5

the dictionary definitions cited by the Plaintiffs and the Defendants define "taxi" as short for "taxicab".

The cases cited by the Plaintiffs in support of their position are clearly distinguishable from the case at bar. For example, in Herman v. Brewah Cab, Inc., 992 F.Supp. 1054 (E.D. Wisc. 1998), the defendant was in the business of transporting elderly persons and individuals with handicaps in specialized motor vehicles. The defendants' fleet consisted of station wagons, minivans and half-ton vans which were equipped with wheelchair lifts, ramps, restraints, first-aid kits and fire extinguishers. Persons requesting transportation call the defendants' corporate office to prearrange the service. Drivers were not allowed to pick up passengers who have not prearranged services. Drivers receive training in cardiopulmonary resuscitation (CPR) and handling of seizures. In addition, drivers were trained in customer assistance, wheelchair handling, fastening of seatbelts and loading/unloading passengers. Drivers were prohibited from receiving tips. The defendants advertised in the yellow pages under the heading of "transportation services for the disabled", and not under the heading of "taxicabs".

The defendants had a contract with the State of Wisconsin Department of Social Services for the purpose of providing transportation services to state Medicaid recipients. According to this contract, the defendants identified their vehicles as being licensed by the City of Milwaukee as wheelchair-accessible handicapped-elderly vehicles and identified themselves as a "handicapped-elderly vehicle service". In addition to the contract with the State of Wisconsin, the defendants provided transportation services through contracts with other entities, including dialysis centers and adult day care facilities.

Under these circumstances, which are far different from the one at bar, the court held that the defendants business was not a taxicab company. In doing so, the court noted (a) the

defendants' involvement in various subsidized programs, (b) the drivers preclusion from receiving tips from passengers, (c) the fact that the defendant is not licensed as a taxicab company, but rather, its cars are licensed as "handicapped elderly vehicles", and the additional training of drivers that that licensure entails.

In Powell v. Carey Int'l, Inc., 490 F.Supp.2d 1202 (S.D. FL. 2006), the defendant advertised itself as a worldwide chauffeured transportation service, it had contractual arrangements with local hotels, corporate clients and destination management companies, and it utilized large cars that are not traditionally recognized as taxicabs. These facts are much different than the ones in the instant matter. While the court further found that the defendant's drivers do not cruise for passengers and that its fares are based on a flat or hourly rate, as opposed to a metered rate, it admitted that these factors were not specifically mentioned in the Department of Labor's definition of "business operating a taxicab", and thus may be of less significance.

In Rossi v. Associated Limousine Services, Inc., 438 F.Supp.2d 1354 (S.D. FL. 2006), the court held that the defendant, as its name implied, was a limousine company, and not a taxicab company. It based this conclusion on the fact that the word "limousine" was in the name of the company, that it advertised as a limousine company, that it did not own or operate a taxicab company, and that it was not licensed to provide taxicab transportation. As a limousine company, the court held, the taxicab driver exemption did not apply.

Finally, the Opinion Letter cited by the Plaintiff (Opinion Letter, Wage and Hour Division, United States Department of Labor (April 17, 1998)), which is annexed to the Affirmation of Plaintiff's Affirmation as Exhibit "12") is completely inapposite to the case at bar. In that matter, as in Herman, supra, the transportation company in question provided

7

transportation for mobility-limited passengers. The vehicles were equipped to handle such passengers, and in some instances a portion of the fee was paid by third party agencies. The holding of that Opinion Letter was simple and narrow: that drivers of vehicles used to transport mobility-limited passengers do not qualify for the taxicab exemption. See Mascol v. E&L Transportation, Inc., 387 F.Supp.2d 87 (E.D.N.Y. 2005)(recognizing that Herman and the above-referenced Opinion Letter refer to ambulettes used to transport mobility limited passengers).

The Defendant herein utilizes small, five (5) passenger vehicles to transport passengers and their property to requested destinations in the local community. It operates without fixed routes or contracts for recurrent transportation. It includes occasional trips to and from transportation terminals, as well as other places where demands for taxicab transportation may be expected.

For the reasons set forth herein, as well as in all of the papers submitted in support of the Defendant's motion for summary judgment, it is clear that Plaintiffs herein performed services for the Defendant as taxicab drivers, and thus are exempt from the overtime provisions of the FLSA.

## POINT II

### THE PLAINTIFFS ARE EXEMPT FROM THE OVERTIME, MINIMUM WAGE AND "SPREAD-OF-HOURS" PROVISIONS OF NEW YORK STATE WAGE AND HOUR LAWS

The Plaintiffs apparently do not contest the Defendants' assertion that they are exempt from the overtime and minimum wage provisions of the New York State Labor Law, as well as from the "spread-of-hours" provisions of New York State Labor Law.

As set forth in the Defendant's Memorandum of Law-in-Chief, under New York State Labor Law §651(5)(e), the definition of the term "Employee" excludes any individual who is

employed or permitted to work as a driver engaged in operating a taxicab. The term "a driver engaged in operating a taxicab" is defined in the New York State Department of Labor's Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. §142-2.14(6) as follows:

> [A]n individual employed to drive an automobile equipped to carry no more than seven passengers, which is used in the business of carrying or transporting passengers for hire on a zone or meter fare basis, and the use of which is generally limited to a community's local transportation needs, and which is not operated over fixed routes, or between fixed terminals, or under contract.

In addition, New York State Vehicle and Traffic Law §148-a defines a "taxicab" as "every motor vehicle, other than a bus, used in the business of transporting passengers for compensation, and operated in such business under a license or permit issued by a local authority". This is <u>exactly</u> what Plandome taxi does, and is. Its vehicles are used to transport vehicles for compensation, and it is licensed to do so, as a taxicab company, by the Town of North Hempstead.

Thus, taxicab drivers, such as the Plaintiffs herein, are exempt from the overtime and minimum wage provisions of the New York State Labor Law, as well as the "spread-of-hours" requirements of 12 NYCRR §142-2.4. For the reasons set forth herein, the Plaintiffs' second and third causes of action should be dismissed in their entirety.

## POINT III

### THE DEFENDANTS MADE NO UNLAWFUL DEDUCTIONS FROM THE PLAINTIFFS' WAGES

The Plaintiffs assert that the Defendant made unlawful deductions from their wages in violation of new York State Labor Law §193. For the following reasons, the Plaintiffs are incorrect.

9

The Plaintiffs were paid based on a simple mathematical equation. That equation was one-half of the day's fares, minus a $5.00 "radio" fee, a $6.00 "dispatcher" fee, and $3.00 to the company's "dent" fund. In this way, the Plaintiff's earnings fluctuated, and were akin to a commission structure. The payment of the above-referenced fees were not deducted after the Plaintiff's earnings were determined, but rather, were part of the computation of those earnings.

The Plaintiffs argue that since they never authorized these payments, they were in violation of New York State Labor Law §193. However, this computation scheme was agreed to by the Plaintiffs at the time they began performing services for the Defendant, and even the Plaintiffs agree that the computation of their remuneration never changed throughout the time period that they drove for the Defendant. Paragraph "39" of the Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1.

For the reasons set forth herein, as well as in the Defendants' initial Memorandum of Law in Support of its Motion for Summary Judgment, the Plaintiffs' fourth and fifth causes of action should be dismissed.

## CONCLUSION

For the reasons set forth herein, the Defendants' motion for summary judgment should be granted in its entirety.

Dated: October 28, 2012
Garden City, New York

Respectfully submitted,

_David S. Feather, Esq. (DF-1832)_

Docket No. CV12-1078

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

JOSEPH ARENA, on behalf of himself
And all others similarly situated,

                      Plaintiffs,

    -against-

PLANDOME TAXI INC. and ROBERT MARMO,
an individual,

                      Defendants.

---

### REPLY MEMORANDUM OF LAW IN SUPPORT

---

                Law Offices of David S. Feather
                    Attorney for Defendants
            666 Old Country Road, Suite 605
             Garden City, New York 11530
                     (516) 745-9000
                   fax (516) 908-3930

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated: October 28, 2012*        Signature _____

                                    David S. Feather (DF-1832)